IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| KENNETH M. DOOLITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 07-356-S-EJL-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| STRUCTURED INVESTMENTS CO., | ) | |
| LLC, a California Limited Liability | ) | |
| Company doing business as | ) | |
| U.S. PENSION FUNDING, | ) | |
| | ) | |
| Defendant. | ) | |

Currently pending before the Court is Defendant's Motion to Change Venue (Docket No. 14);  Plaintiff's Motion to Strike Portions of Overson Declaration (Docket No. 16); Plaintiff's Motion to Strike Defendant's Reply Memorandum and Supplemental Affidavit of Overson Re: Venue Motion (Docket No. 18); and Plaintiff's Motion for Sanctions (Docket No. 19).[1]  The Court heard oral argument concerning all pending motions on November 4, 2008, and thereafter took the motions under advisement.  After careful consideration of the parties' written submissions and oral argument, the matter is now ripe for review.  The Court will deny Defendant's motion to change venue, and dispose of the other motions as more fully explained below.

---

[1] Plaintiff subsequently withdrew Docket No. 19, Plaintiff's Motion for Sanctions, on June 10, 2008.  Docket No. 25.  However, despite the withdrawal, it is still at issue because Defendant seeks an award of costs and attorney fees for having to respond to the motion unnecessarily.  *See* Def.'s Opp. to Mot. for Sanctions, Docket No. 23.

MEMORANDUM DECISION AND ORDER - 1

# I.
## Background

In this diversity action, Plaintiff Kenneth Doolittle ("Doolittle") sued Defendant Structured Investments Co., LLC ("SIC") for failure to pay wages, breach of contract, unjust enrichment, and infliction of emotional distress.  Am. Compl., Docket No. 2.  Doolittle alleges that SIC hired him as an employee, and that he began working for SIC on November 1, 2005.  Am. Compl. at 2, Docket No. 2.[2]  At the time he was hired, Doolittle lived in Southern California, where SIC had its principal place of business.  Some time afterwards, Doolittle relocated to Meridian, Idaho, with SIC's permission, because Doolittle's job as Marketing Director did not require his presence in California.  Mem. at 2, Docket No. 15.[3]  Doolittle ceased working for SIC in July 2007, and demanded payment of $146,064 in wages and expenses.  He claims wages are due to him under Idaho's wage claim statute, Idaho Code § 45-614.  SIC denies that Doolittle was an employee, and contends that it paid Doolittle all that was owed to him under an independent consulting agreement it had with him.  Ans. at ¶ 17, Docket No. 3; Covey

---

[2]  At the hearing, Doolittle represented that he had an ongoing relationship with SIC, and had previously worked for SIC in 1998.  However, Doolittle conceded that he was not making any claim for money owed arising out of his relationship with SIC in 1998, and that all claims in this lawsuit relate to services performed for SIC beginning on November 1, 2005.

[3]  It is not clear why Doolittle moved to Meridian, Idaho.  Doolittle contends that he moved to Meridian as part of his employment, and that SIC provided some relocation expenses.  Mem. at 2, Docket No. 15.  SIC, however, denies that it requested Doolittle to move, asserting that SIC  never had a business presence in Idaho or requested that Doolittle market its services in Idaho.  Aff. of Covey, ¶¶ 16–18, Docket No. 14-13.  Doolittle does not dispute, however, that when he began working for SIC, he resided in California.  Aff. of Doolittle, ¶ 2, Docket No. 15-3 (wherein Doolittle affirmed that "Defendant agreed to my relocation to Meridian, Ada County, Idaho, *during* my employment with it.") (emphasis added).

Aff. ¶¶ 15, 18, Docket No. 14-13.

On March 25, 2008, SIC filed its motion to transfer venue to the Central District of California, Southern Division,[4] pursuant to 28 U.S.C. § 1404(a).  SIC argues that venue is more appropriate in the Central District of California because SIC's office is located in Huntington Beach; three of its four employees, all of whom would be witnesses, work from that office; trying a case in Idaho would disrupt its business operations, which depend upon the presence of its employees; and Doolittle originally was from California, and has substantial contacts with the state.  Doolittle does not deny that he began working for SIC while he resided in California.  SIC argues that the inconvenience to Doolittle by moving venue to California would be less than upon SIC and its employees to have the trial in Idaho.  SIC also asserts that California law or possibly Nevada law governs the contractual relationship between it and Doolittle, because the place of contract negotiations between the parties was either California or Nevada.  Mem. at 16, Docket No. 14-2.

SIC also notes that Doolittle is a debtor in a Chapter 7 bankruptcy case filed on September 12, 2005, in the Northern District of California, San Jose Division.  Mem. at 3, Docket No. 14-2; Overson Decl. ¶ 6, Ex. A, Docket No. 14-4.  Because of Doolittle's bankruptcy filing, SIC argues that Doolittle's wage and breach of contract claims may be

---

[4]  The Central District of California, Southern Division, encompasses Orange County in Southern California.  *See* United States District Court homepage, http://www.cacd.uscourts.gov/ (follow "Court Addresses and Directories" hyperlink; then follow "Court Addresses" hyperlink for a map showing the federal courthouse locations in California (last visited Oct. 21, 2008)).

**MEMORANDUM DECISION AND ORDER - Page 3**

bankruptcy estate property.  Therefore, SIC contends that the claims Doolittle asserts in this litigation belong to the Chapter 7 bankruptcy trustee to pursue in the context of Doolittle's bankruptcy case.  SIC submitted the Declaration of Darwin Overson, Docket No. 14-3, containing the docket of Doolittle's bankruptcy case as well as copies of pleadings filed therein.  Decl. of Overson, Docket No. 14-3.

Doolittle, on the other hand, disagrees that his bankruptcy case has any bearing upon his choice of forum, arguing that a plaintiff's choice of venue is accorded great weight.  He also asserts that his bankruptcy case is now closed.  Because he has asserted claims under Idaho law, Doolittle argues that Idaho public policy favors litigating in Idaho.  He contends that it is not any more convenient for him to travel to California than for SIC and it's witnesses to travel to Idaho for trial.

A number of other pending motions were generated from SIC's initial motion to change venue that require a decision before the venue motion can be fully considered.  First, Doolittle moved to strike the Overson Declaration, Docket No. 14-3.  Overson's declaration includes Doolittle's bankruptcy case docket and several pleadings filed in the bankruptcy case.  The nature of the pleadings indicate that the Chapter 7 Trustee sought denial of discharge and prevailed due to claims that Doolittle was less than forthcoming in his bankruptcy schedules and intentionally hid assets that belonged to the bankruptcy estate.  Doolittle argues that the declaration contains irrelevant and prejudicial evidence submitted for the sole purpose of annoying and harassing Doolittle, and unnecessarily increasing the costs of litigation.  Mot. at 2, Docket No. 16; Mem. at 3, Docket No. 16-2.

**MEMORANDUM DECISION AND ORDER - Page 4**

Doolittle contends that his bankruptcy case, which was filed in the Northern District of California, is not relevant to whether venue should be transferred in this case to the Central District of California, some three hundred miles away from the venue of the bankruptcy proceedings.

SIC then filed a reply memorandum with supplemental affidavits in support of its motion to transfer venue.  SIC filed its reply memorandum on May 1, 2008, and submitted the Supplemental Affidavit of Overson and the Supplemental Affidavit of Covey.  Docket No. 17.  Doolittle seeks to strike both the motion and affidavits as being untimely, and to strike the affidavits for the additional reason that they are prohibited by the federal and local rules.  Docket No. 18.  The two affidavits contain facts concerning the status of Doolittle's bankruptcy case as well as information concerning another lawsuit Doolittle filed against SIC pending in the Superior Court of California in Orange County.  Suppl. Aff. of Covey, Docket No. 17-3.

Finally, Doolittle filed a motion for sanctions, Docket No. 19, under Fed. R. Civ. P. 11(b)(1) for the same reasons expressed in his motion to strike the Declaration of Overson, contending that the declaration containing information about his bankruptcy case was filed solely for an improper purpose.  Mot. at 2, Docket No. 19.  Doolittle later withdrew this motion after SIC filed an affidavit and memorandum pointing out that Doolittle failed to comply with the mandatory Rule 11 procedure because he filed his motion prior to the expiration of the twenty-one day waiting period.  Mem. in Opposition at 2, Docket No. 23; Reply and Notice of Withdrawal, Docket No. 25.  SIC seeks an

award of attorney fees as sanctions under Fed. R. Civ. P. 11(c)(2) for Doolittle's

transgression.  Mem. at 6, Docket No. 23.

## II.
## Analysis

**A.**   **Plaintiff's Motion to Strike Defendant's Reply Memorandum And Supplemental Affidavits (Docket No. 18)**

Doolittle filed a motion to strike SIC's reply memorandum and supplemental

affidavits in support of its motion to transfer venue, asserting the reply was untimely filed

outside of the ten day service period pursuant to Dist. Idaho Loc. Civ. R. 7.1(b)(3), and

that additional affidavits are not permitted by the rules of civil procedure.  At the hearing,

Doolittle's counsel conceded that SIC timely filed its reply memorandum under Fed. R.

Civ. P. 6(a), and that an oversight on his part caused him to miscalculate the rule.

Counsel also apparently failed to notice that the Court's docket entry for the

memorandum in opposition, Docket No. 15, specified that replies were due by May 1,

2008.  SIC timely filed its reply brief on May 1, 2008.

Doolittle also argues that the additional affidavits submitted with SIC's reply

should be stricken because the submission of affidavits with a reply memorandum

violates Fed. R. Civ. P. 6(c)(2) and Dist. Idaho Loc. Civ. R. 7.1(b)(2).  At a minimum,

Doolittle contends that leave of the Court should have been requested before SIC filed the

affidavits.  SIC filed two affidavits, the Supplemental Affidavit of Overson and the

Supplemental Affidavit of Covey, with its reply in support of its motion to transfer venue,

contending that the two supplemental affidavits respond to new matters raised in

**MEMORANDUM DECISION AND ORDER - Page 6**

Doolittle's response memorandum. SIC contends that the Supplemental Affidavit of Overson was limited to addressing Doolittle's assertion that his Chapter 7 bankruptcy proceedings had concluded, while the Covey Affidavit was submitted to rebut Doolittle's statement that a transfer to the Central District of California, Southern Division, would be inconvenient.

The rules Doolittle cited do not explicitly prohibit the submission of affidavits with a reply memorandum. Rather, Fed. R. Civ. P. 6(c)(2) states that, "any affidavit supporting a motion must be served with the motion." However, reply affidavits that respond only to the opposing party's brief are properly filed with a reply brief. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir. 2002). "While the Rules are silent as to timing matters with reply affidavits, precedent establishes that, in the face of new evidence, the court should permit the opposing party an opportunity to respond" so long as no element of surprise or prejudice is created by doing so. *Peters*, 285 F.3d at 477.

In his memorandum opposing the venue transfer request, Doolittle asserts that his bankruptcy case is not relevant because, among other reasons, it was concluded by the issuance of an order denying discharge on March 6, 2008. Aff. of Kormanik, Exs, 2, 3, Docket No. 15-2. He also contends that travel to a district court in Southern California would be inconvenient and cost-prohibitive, considering he would have to hire California counsel and travel there himself. Mem. at 6, Docket No. 15. In response, SIC provided facts that Doolittle was actively pursuing a small claims matter against SIC in Orange County, located in Southern California, and that trial was scheduled for June 6, 2008.

**MEMORANDUM DECISION AND ORDER - Page 7**

Suppl. Aff. of Covey, Docket No. 17-3.  SIC also noted that several adversary proceedings were pending against Doolittle related to his bankruptcy case, meaning that his bankruptcy proceedings had not concluded.  Suppl. Aff. of Overson, Docket No. 17-2.

In reviewing the two supplemental affidavits, it does not appear Doolittle is prejudiced by their filing or that the affidavits did anything other than respond to the contentions Doolittle raised in his opposition brief.  Although it would have been preferable had leave of the Court been requested by SIC, the rules do not explicitly require such a request. The affidavits state facts presumably known to Doolittle. Therefore, the affidavits will not be stricken for the reasons Doolittle proffers.

## B.   Plaintiff's Motion to Strike the Overson Declaration (Docket No. 16)

Although Doolittle did not refer to Rule 12, motions to strike are properly brought under Fed. R. Civ. P. 12(f).  Under that rule, the Court may strike from a pleading an insufficient defense, or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Doolittle seeks to strike paragraphs 7–12 and 14, as well as their corresponding exhibits, in the Overson Declaration because he contends they introduce irrelevant and prejudicial facts concerning his Chapter 7 bankruptcy case in the Northern District of California.[5]  SIC relies heavily upon the notion that Doolittle's bankruptcy case is relevant to the Court's decision to transfer venue, arguing Doolittle's claims are

---

[5]  Doolittle's motion specified he also sought to strike Exhibit H, but not paragraph 13 of the declaration.  At the hearing, Doolittle's counsel clarified that the request to strike Exhibit H was in error. Exhibit H of the Overson Declaration contains a Certificate of Assumed Business Name filed with the Idaho Secretary of State on March 29, 2006.  It does not relate to Doolittle's bankruptcy case.  No argument had been presented in Doolittle's brief, either, to explain why it should be stricken.

**MEMORANDUM DECISION AND ORDER - Page 8**

property of his bankruptcy estate.  Therefore, according to SIC, the bankruptcy court in California should be exercising jurisdiction because the Chapter 7 Trustee is the real party in interest in this case.  Mem. at 18–19, Docket No. 14-2.  The portions of the Overson Declaration at issue contain Doolittle's petition, various motions for turnover filed by the Chapter 7 Trustee, and the bankruptcy court's decision concerning the motion for turnover of assets and denial of discharge.  After due consideration, the offending portions of Overson's Declaration will be stricken.

First, SIC is mistaken that Doolittle's claims in this case are property of his Chapter 7 bankruptcy estate.  Under the Bankruptcy Code, the filing of a bankruptcy petition creates a bankruptcy estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541(a)(1).[6]  The scope of section 541 is broad and includes all tangible or intangible property of the debtor.  *Cusano v. Klein*, 264 F.3d, 936 (9th Cir. 2001).  Although the debtor is required to list assets in his or her schedules under 11 U.S.C. § 521(1), the failure to schedule an asset does not protect it from the reach of § 541(a)(1).  *See* 11 U.S.C. § 554(d) (property that is not administered remains estate property).  The question of whether an interest claimed by the debtor is property of the estate is a question decided by federal bankruptcy law, while the Court looks to state law to determine the nature and extent of a

---

[6] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as they existed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (April 20, 2005), because Doolittle's bankruptcy case was commenced prior to BAPCPA's effective date of October 17, 2005.  According to the bankruptcy case docket, Doolittle filed his bankruptcy petition on September 12, 2005.  Decl. of Overson, ¶ 4, Docket No. 14-3.

**MEMORANDUM DECISION AND ORDER - Page 9**

debtor's interest in specific property. *In re Martell*, 349 B.R. 233, 235–36 (Bankr. D. Idaho 2005) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).

Property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, <u>except</u> such as are <u>earnings from services</u> performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6) (emphasis added). Under § 541(a)(6), the bankruptcy estate would therefore exclude any funds representing Doolittle's earnings for services performed post-petition. *In re Martell*, 349 B.R. at 235. In addition, assets of the estate include any causes of action that existed pre-petition, and conversely exclude causes of action that arose post-petition. *Cusano*, 264 F.3d at 945.

Doolittle admits in his briefs and in his Amended Complaint that he did not begin working for SIC until "on or about November 1, 2005," which is after his September 12, 2005 bankruptcy petition filing date. Am. Compl., ¶ 12, Docket No. 2. Thus, any compensation he earned for services performed for SIC were all earned post-petition and would not be bankruptcy estate property. Consequently, his corresponding claims against SIC for unpaid wages, breach of contract for failure to pay wages, unjust enrichment and infliction of emotional distress, would also not have arisen until after his wages were unpaid or the contract was breached. Those events could not have occurred prior to November 1, 2005, the start date of Doolittle's alleged employment. Accordingly, Doolittle's claims for unpaid wages are not bankruptcy estate property, and the Chapter 7 Trustee has no interest in the outcome of this case.[7]

SIC's reliance upon *Fitzsimmons v. Walsh*, 725 F.2d 1208 (9th Cir. 1984), for the

---

[7] It is likely that the bankruptcy trustee would have had knowledge of this matter long ago, considering the bankruptcy case commenced in 2005 and is still pending, as are several adversary proceedings. More likely than not, the Chapter 7 Trustee reached this same conclusion, as the principles discussed above are elementary principles of bankruptcy law.

**MEMORANDUM DECISION AND ORDER - Page 10**

proposition that the bankruptcy estate includes post-petition earnings derived from the use of a debtor's pre-petition property is misplaced.  SIC argues that *Fitzsimmons* supports the idea that earnings derived from the use of vehicles, office equipment, cash, and other capital that the bankruptcy court determined was estate property is also estate property.  Therefore, SIC contends that Doolittle's earnings generated from the use of bankruptcy estate property are estate property.  Reply Mem. at 3, Docket No. 17.  *Fitzsimmons*, however, involved a Chapter 11 filing by a debtor-in-possession of an existing law practice, and a trustee seeking a determination as to whether accounts receivable constituted part of the estate.  In contrast, Doolittle filed a Chapter 7 case and he is an individual who began working for SIC, whether as an employee or an independent contractor, *after* filing his bankruptcy petition.

Even more to the point, § 541(a)(6) encompasses the right to payment attributable to post-petition or pre-petition *services* provided by the debtor, and it does not link those services to the use of particular property.  *In re Wu*, 173 B.R. 411, 415 (9th Cir. B.A.P. 1994) (explaining that if the right to payment of wages or accounts receivable is based upon services rendered pre-petition, even if the wages are paid post-petition, they will be considered estate property).  The relevant distinction is the date upon which the debtor provides services that generate a claim for wages or money owed, and the right to payment based upon those services, rather than services that rely upon the use of tangible items found to be property of the bankruptcy estate.[8]

---

[8]  SIC fundamentally misreads 541(a)(6).  While it is true that proceeds or profits derived from property of the estate are estate property, the crucial distinction is how those profits were generated.  In this case, the Court is looking at personal services that generated a claim for payment.  Therefore, the exception to § 541(a)(6) applies, exempting such earnings from property of the estate.  While those services involved the use of routine office equipment, the equipment in and of itself generated no proceeds beyond their liquidation value.  The equipment, and its corresponding liquidation value, was already determined to be property of the bankruptcy estate, as SIC represented.

Accordingly, SIC's argument in support of its motion to transfer venue that the Chapter 7 Trustee has an interest in prosecuting the claims Doolittle asserts in his amended complaint is rejected. Moreover, SIC could have made its point that Doolittle is a debtor in a pending bankruptcy case and related adversary proceedings without providing over two hundred pages of irrelevant material. Exhibit A of the Overson Declaration contains a copy of the bankruptcy court's docket, and paragraph five contains information about the case name. That should have been sufficient to inform the Court that Doolittle has contacts with the state of California by way of his bankruptcy filing. Thus, to the extent SIC insinuates with the submission of the additional exhibits that Doolittle should be cast in an unfavorable light considering the outcome of his bankruptcy case, the Court declines to entertain any such suggestion.

Doolittle's motion to strike will therefore be granted. The Court has limited its consideration to the fact that Doolittle filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the Northern District of California, San Jose Division, and that the bankruptcy court issued a denial of discharge on March 6, 2008.[9] The Court also notes that the record before it indicates several adversary cases are still pending. Suppl. Aff. of Overson, Docket No. 17-2.

## C.      Plaintiff's Motion for Sanctions (Docket No. 19)

In addition to his motion to strike, Doolittle filed a motion for sanctions under Fed. R. Civ. P. 11 for SIC's failure to withdraw the Overson Declaration. He contends that the Overson Declaration and the offending exhibits were presented "for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

---

[9] This does not mean, however, that Doolittle's bankruptcy case has concluded. No reference has been made to any order issued closing the case.

MEMORANDUM DECISION AND ORDER - Page 12

Mot. at 2, Docket No. 19 (citing Fed. R. Civ. P. 11(b)(1)).  Specifically, he argues that the declaration and attached exhibits are irrelevant; contain aspersions concerning Doolittle's character; and have no bearing concerning SIC's request to transfer venue to the Central District of California considering the bankruptcy case is pending in Northern California.  These same arguments were made in support of Doolittle's Motion to Strike, Docket No. 16.

When SIC filed its motion opposing the sanctions motion, it noted that Doolittle failed to comply with Rule 11's twenty-one day safe harbor provision.  At that point, Doolittle withdrew his motion for sanctions, which he confirmed at the hearing.  Docket No. 25.  However, SIC seeks an award of attorney fees under Fed. R. Civ. P. 11(c)(2), which allows the Court, "[i]f warranted, . . . [to] award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

The invocation of Rule 11 is designed to deter attorneys from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required.  Rule 11 states that when an attorney presents a paper or pleading to the Court, he or she is certifying that, to the best of the person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances,

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for

**MEMORANDUM DECISION AND ORDER - Page 13**

> extending, modifying, or reversing existing law or for
> establishing new law[.]

Fed. R. Civ. P. 11(b)(1), (2).

Sanctions may be imposed either upon the attorney or the party responsible for the violation. Fed. R. Civ. P. 11(c)(2). The party subject to the motion is allowed a twenty-one day safe harbor to withdraw the offending pleading and thereby escape sanctions. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). This period is a mandatory prerequisite to a motion for sanctions brought by a party. *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005).

Doolittle argues fees against him are improper because SIC also failed to follow the safe harbor provision. However, Rule 11(c)(2) contains no such requirement, and instead allows fees to the "prevailing party."[10] Yet, it is clear that the provision allowing an award of attorney fees to the prevailing party is discretionary by its use of the phrase "if warranted" and the word "may." Attorney fees are not mandatory in a situation such as that before the Court. Both parties are culpable in this case for filing unnecessary pleadings and needlessly increasing the cost of this litigation. SIC presented documents attached to the Overson Declaration that were irrelevant, in support of its frivolous argument under the Bankruptcy Code that Doolittle's claims constitute bankruptcy estate property. If SIC truly thought that the Chapter 7 Trustee had some interest in Doolittle's

---

[10] It would be rather absurd if Rule 11(c)(2) required the party opposing the motion to follow the safe harbor provisions in any event, because that would necessitate filing yet another Rule 11 motion asking the previous proponent of Rule 11 sanctions to withdraw the offending sanctions motion in order to obtain fees as the prevailing party.

**MEMORANDUM DECISION AND ORDER - Page 14**

claims, there is no indication it ever brought the issue to the bankruptcy trustee's attention.  It was unnecessary to attach over two hundred pages of irrelevant material, especially considering SIC could have made its point, as well as its argument, without the disparaging material.

Doolittle is also not without fault in these proceedings.  His sanctions motion was based upon the same arguments as his motion to strike.  And, he failed to comply with the rule requiring a twenty-one day waiting period.  He also overlooked not only the provisions of Fed. R. Civ. P. 6, but also the notation on the docket that would have alerted him that his motion to strike SIC's reply for being untimely was unwarranted.  Thus, he has also driven up the cost in this case.  Under these circumstances, the Court will not sanction or reward either attorney's behavior, and it declines to award attorney fees to SIC for defending against the sanctions motion.

## D.    Defendant's Motion to Transfer Venue (Docket No. 14)

The primary motion before the Court can now be dealt with.  Under 28 U.S.C. § 1404(a), a district court has the discretion to transfer a case to another venue.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "[T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal

MEMORANDUM DECISION AND ORDER - Page 15

quotations omitted).  In a motion to transfer venue, the burden is upon the defendant to "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  It is the court's duty to "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co.*, 805 F.2d at 843.  Courts must consider both the private and public interest factors at stake before transferring venue.  *Id.*

Every motion to transfer warrants an "individualized case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d 495 at 498.  To aid in this analysis, the Ninth Circuit has developed a set of factors to determine when a transfer of venue is proper.  *Id.*

A court should consider:

> (1) the locations where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties's contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99.  In addition, the *Jones* court noted that plaintiff's choice of forum and relevant public policy of the forum state are significant factors in a § 1404(a) determination.  *Id.* at 499.

Here, the Court concludes that the District of Idaho is a proper venue for this

**MEMORANDUM DECISION AND ORDER - Page 16**

action and acknowledges that the action could also have been brought in the Central District of California, where SIC resides.  The remaining issue to determine is whether a transfer to the Central District of California is warranted under the circumstances.  To determine whether a transfer of venue is proper in this instance, the Court will address each of the *Jones* factors listed above.

**1.     Location where the relevant agreements were negotiated and executed**

There is scant information presented upon this issue.  According to SIC's version, Mr. Covey, SIC's principal, met with Doolittle in Las Vegas to discuss the possibility of working with him.  Aff. of Covey at ¶ 15, Docket No. 14-13.  No agreement was allegedly reached.  Doolittle did, however, began performing services for SIC in California beginning in November 2005.  *Id.*  At some time afterwards, Doolittle moved to Meridian, Idaho, and continued providing services by telecommuting.  *Id.* at ¶ 16; Aff. of Doolittle at ¶ 5, Docket No. 15-3.  Doolittle does not contradict SIC's characterization. Rather, Doolittle focuses on the trip Mr. Covey made to Idaho in July 2006, wherein over several days the gentlemen met to discuss "business and my employment with Defendant."  Aff. of Doolittle at ¶ 6–9, Docket No. 15-3.  Based upon the fact that Doolittle began performing services for SIC while he resided in California, it would appear that any relevant agreements were negotiated and executed in California. Therefore, this factor tips in favor of SIC, and transferring venue to California.

**2.     State that is most familiar with the governing law**

While analyzing law from a different state is certainly not uncommon for a federal

district court, it is nonetheless a factor to consider in deciding whether venue should be transferred. *See Idaho Supreme Potatoes, Inc. v. Applied Financial, LLC*, 2006 WL 3365784 (D. Idaho 2006). Doolittle has alleged four separate causes of action, all arising out of the agreement or agreements with SIC. He asserts a wage claim under Idaho Code § 45-601 *et. seq.*; a breach of contract claim; a claim for infliction of emotional distress; and an equitable claim for unjust enrichment. The parties disagree over the applicable law governing their dispute, with SIC claiming California law governs, and Doolittle contending Idaho law governs. Neither party adequately addressed a choice of law analysis, although SIC did provide a brief discussion in its reply brief. *See* Reply Mem. at 7, Docket No. 17.

The Court views this case as one primarily dealing with breach of an alleged agreement to pay Doolittle for services rendered to SIC. It may or may not involve a claim for wages and associated treble damages, as application of Idaho Code § 45-615 depends in large part upon whether or not Doolittle was employed as an employee or an independent contractor. *Ostrander v. Farm Bureau Mut. Ins. Co.*, 851 P.2d 946 (1993) (statute only applies to employees). The parties dispute the nature of the employment agreement. However, Doolittle does not deny that he began providing services to SIC while he resided in California, nor does he dispute that he essentially telecommuted upon his move to Idaho, as SIC never provided services in Idaho. Doolittle sent e-mails, facsimiles, updated SIC's web page, and performed marketing services for SIC's clients in California. Accordingly, factor two probably tips in favor of SIC, but for purposes of

**MEMORANDUM DECISION AND ORDER - Page 18**

this analysis the Court will treat it as neutral when deciding whether or not to transfer in this case because of the wage claim asserted under Idaho law.

### 3. Plaintiff's choice of forum.

Generally there is a strong presumption in favor of honoring a plaintiff's choice of forum. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). In this instance, SIC claims that less weight should be given to Doolittle's selection because Idaho lacks significant contacts with the underlying cause of action. *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp.2d 82, 86 (D. D.C. 2004).

It appears clear that California does have significant contacts with the underlying action. While it is not entirely clear where the agreement was reached, there is no dispute that Doolittle provided services to SIC in California. With the exception of Doolittle, all of the key witnesses reside in California. Aff. of Covey, Docket No. 14-3; Aff. of Craze, Docket No. 14-14; Aff. of Groman, Docket No. 14-15; Aff. of Montemayor, Docket No. 14-16. Four of the witnesses currently work for SIC, including Covey. A former employee, Ms. Ana Muresean, is alleged to have personal knowledge of the business relationship between SIC and Doolittle, as she was SIC's bookkeeper at the time. Aff. of Covey at ¶ 12, Docket No. 14-13. Ms. Muresean currently resides in Los Angeles, California. *Id.* at ¶ 13. The business records relating to the relationship between SIC and Doolittle are also in California. *Id.* at ¶ 14. Idaho's contacts with this action relate to the place where Mr. Doolittle ultimately provided services for the benefit of SIC, and the fact that Doolittle currently resides here. Aff. of Doolittle at ¶¶ 3–6, Docket No. 15-3.

While Idaho has some contacts with this action, it is clear that California has significant contacts as well.  However, the party requesting the transfer must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v. Common Wealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1986).  SIC has not made such a showing.

The only inconvenience SIC identified is the cost and inconvenience of traveling to Idaho for trial.  But Doolittle would suffer the same inconvenience if venue were to be transferred to California.  Yet, a trial may not ever occur.  It is entirely possible this matter could reach a settlement and never come before a jury.  When asked at the hearing, both parties agreed that depositions of SIC's key witnesses would take place in California, while Doolittle's deposition would take place in Idaho.  The locations of the depositions would not change upon a transfer of venue to California.  In this age of electronic mail, facsimiles, and other technological advances, discovery practice does not seem to be impacted, nor did the parties identify any particular burdens upon the exchange of discovery caused by venue in Idaho.  When the burden is, in essence, equivalent, SIC has not overcome the presumption in favor of honoring Doolittle's choice of forum.  Accordingly, factor three weighs in favor of Doolittle.

### 4. Parties' contacts with the forum and contacts relating to the plaintiff's cause of action in the chosen forum

Although disputed at this point, absent any other facts it appears the agreement was most likely negotiated and executed in California.  Also notable is the fact that at the time of the parties' dealings, SIC was not conducting business in Idaho.  On the other hand, SIC permitted Doolittle to telecommute and provide services to SIC while Doolittle lived in Idaho.  While the

case relates primarily to the causes of action arising from the Agreement between the parties, the case also involves services provided to SIC while Doolittle resided in Idaho. The parties had contacts in both forums and factors four and five are therefore neutral in the motion to transfer analysis.

To the extent SIC argues Doolittle's frequent travel to California related to other litigation he may be pursuing constitutes "contact" with the forum in the context of a motion to transfer venue, that argument is rejected. According to *Jones*, the Court must analyze how the cause of action relates to the chosen forum, and how the parties' contacts with the forum relate to the issues the Court must decide. Mere travel to the forum, without more, is not part of the *Jones* analysis.

### 5. Differences in the cost of litigation in the two forums and availability of compulsory process

Both parties assert that their choice of forum is more convenient for all the parties concerned. Neither party discussed in detail any specific differences in the cost of the litigation in one forum over the other. SIC has stated that most of the witnesses, with the exception of Doolittle, are located in or near the Central District of California, Southern Division, and the cost of traveling to and from Idaho would be much greater than if the case were transferred to California. However, these costs are limited to the trial only, as depositions will be conducted in California in any event. Doolittle claims that if the case were transferred to California, he would be required to hire California counsel, and that the costs for him to travel to California would be "prohibitive" and result in the inability to continue to prosecute the action. Aff. of Doolittle at ¶ 12-16, Docket No. 15-3. Again,

however, these costs relate mostly to trial.

"[T]ransfer should not be allowed if the party requesting transfer is merely attempting to shift the inconvenience from one party to the other." *Silver Valley Partners, LLC v. De Motte*, 2006 WL 2711764 at *4 (W.D. Wash. 2006). "The convenience of the witnesses is often the most important factor" in deciding whether to allow transfer. *Florens Container v. Cho Yang Shipping,* 245 F. Supp.2d 1086, 1092 (N.D. Cal. 2002) (citing 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 1381 at 264).

All of the witnesses with the exception of Doolittle reside in California. One of the witnesses, Ms. Muresean, is no longer employed by SIC, but still remains in California. She would not be subject to compulsory process in Idaho. As far as witnesses are concerned, it would be far more convenient if this case were transferred to California. Sheer numbers dictate that result, as the convenience of the four fact witnesses besides Mr. Covey residing in California clearly outweighs the inconvenience to one plaintiff witness. Doolittle has not identified any other witnesses from Idaho who would testify on his behalf.

As stated previously, the Court views this case as one dealing with a claim for breach of contract, and not a claim largely involving any intricacies of Idaho law except for the wage claim. It is clear that the majority of relevant witnesses are closer to the Central District of California and within its subpoena power. Again, though, these costs relate only to the trial. The parties stated on the record that depositions of the California

**MEMORANDUM DECISION AND ORDER - Page 22**

witnesses would occur in California, and Doolittle's deposition would occur in Idaho.  At this point, it is not clear how many of the California witnesses in addition to Mr. Covey would even be necessary to testify at trial.  SIC argued that its offices would be shut down if all of its employees had to travel to Idaho to attend a trial for five days, but again failed to explain why all of its employees would be required to be present for one week or why its business would be disrupted given the availability  of computers, e-mail, the internet, remote computing, and cellular telephones.  Accordingly, factors six and seven do not weigh in favor of either party, given the fact that SIC would merely be shifting the inconvenience to Doolittle, and that inconvenience relates only to trial.

### 6.     Ease of Access to Sources of Proof

Again, the crux of this dispute arises from the agreement between the parties and the interpretation of that contract.  Doolittle does not discuss any issues concerning access to evidence in either Idaho or California.  SIC asserts that most of the evidence concerning the parties' agreement, including any payments made to Doolittle, are contained in California and that any documents are already possessed by the parties themselves.

Based upon the nature of the dispute, the Court agrees that the parties probably already possess much of the necessary evidence and any further evidence needed would likely be in document form, either in the form of a paper document or an electronic document.  "The location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are

**MEMORANDUM DECISION AND ORDER - Page 23**

needed." *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, 2005 WL 2649206 at *5 (N.D. Cal. 2005). If there are any documents in California, they can be shipped to Idaho. The same holds true for any electronic copies of documents, which can easily be burned to a computer disk. Thus, the Court finds that factor eight weighs against transfer.

### 7. Other factors - Companion Case

The Court is not persuaded by SIC that Doolittle's bankruptcy case, or any of the related adversary proceedings, pending in the Northern District of California is vital or relevant to the outcome of this case. Nor has SIC explained how Doolittle's small claims action in the Central District of California relates to these proceedings, other than to point out that Doolittle likely travels to California to pursue various matters related to those actions. Instead, this case concerns a dispute arising from a contract entered into between the parties. As Doolittle has alleged, if there is a valid agreement that has been executed between the parties regarding payment of wages and reimbursement of expenses, SIC would have the legal obligation honor the agreement and pay whatever wages or compensation is found to be due and owing. None of the other lawsuits in which Doolittle is involved appear to have any relationship to this case. Thus, this factor is neutral.

### 8. Public Policy Considerations.

Both parties cite to federal district courts in support of their respective states' public policy interests. SIC asserts that there is a strong local interest in having a case heard in the state where the contract was negotiated. *Southern Utah Wilderness Alliance*

*v. Norton,* 315 F. Supp.2d 82, 88 (D. D.C. 2004).  Doolittle counters by claiming that states have a significant interest in deciding controversies governed by their laws, in this case Idaho's Wage Claim Act.  *United Air Lines, Inc. v. Mesa Airlines, Inc.* 8 F. Supp.2d 796, 798-99 (N.D. Ill. 1998).  The Court agrees that each state has an interest in protecting the rights of its citizens.  The Court therefore finds these considerations to weigh equally between the parties.

## IV.
## Conclusion

Doolittle selected the District of Idaho as his chosen forum and SIC has not met its burden to make a strong showing of inconvenience such that transfer to the Central District of California is warranted.  This is a case concerning a dispute arising from an agreement that was, more likely than not, negotiated and executed in California.  There is, however, a claim for wages under Idaho law.  No inconvenience, other than the testimony of witnesses other than Mr. Covey at trial in Idaho, was shown.  In analyzing the *Jones* factors, it is clear that it would be no more convenient to transfer the case to the Central District of California.  Accordingly, the Court denies the motion to transfer venue.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

1) Defendant's Motion to Change Venue (Docket No. 14) is **DENIED**.

2) Plaintiff's Motion to Strike Portions of Overson Declaration, Docket No. 14-3 (Docket No. 16) is **GRANTED**.

3) Plaintiff's Motion to Strike Defendant's Reply Memorandum and Supplemental Affidavit of Overson Re: Venue Motion (Docket No. 18) is **DENIED**.

4) Plaintiff's Motion for Rule 11 Sanctions (Docket No. 19) is **WITHDRAWN** and therefore **DENIED AS MOOT**. The Court will not award either party any sanctions or attorney fees.

DATED: December 4, 2008

Honorable Candy W. Dale
Chief United States Magistrate Judge